23-mj-7030-JCB

### AFFIDAVIT OF SPECIAL AGENT JASON TAYLOR
### IN SUPPORT OF A CRIMINAL COMPLAINT

I, Special Agent Jason Taylor, being sworn, state as follows:

### INTRODUCTION

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I was appointed to the FBI in May 2019. As such, I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code: that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516, Title 18, United States Code.

2.      I am currently assigned as a Special Agent to the FBI Metro Boston Gang Task Force ("MBGTF"). My duties include working as a liaison between federal, state, and local law enforcement entities in the investigation of illegal distribution of narcotics, firearm offenses, and associated gang-related violent crimes. In the course of participating in investigations of drug distribution/trafficking, I have conducted or participated in surveillance, the purchase of illegal drugs and firearms, the execution of search warrants, debriefings of subjects, witnesses, and informants and reviews of consensually recorded conversations and meetings.  Through my training, education, and experience, I have become familiar with the manner in which drug traffickers conduct their illegal drug trafficking activity, to include their use of cellular telephones to contact drug customers, drug runners, drug associates, and sources of illegal drug supply.  I am familiar with narcotics traffickers' methods of operation, including distribution, storage, and transportation of narcotics.

3.      Prior to my current assignment, I was assigned to the FBI Miami Field Office where I conducted investigations in Transnational Organized Crime Western Hemisphere, prior to the

assignment in Miami I was a United States Army Infantry Officer where I conducted Counter Terrorism and Counterinsurgency Operations.

4.      Based on my training and experience as a Special Agent, I am familiar with federal narcotics laws. I know that it is a violation of Title 21 U.S.C. § 841(a)(1), for any person to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

## PURPOSE OF AFFIDAVIT

5.      I submit this affidavit in support of a Criminal Complaint charging Csean SKERRITT ("SKERRITT"), a/k/a "SHIZZ GRIMMY," a/k/a "BLACK," born 1988, with distributing over forty grams of fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and b(1)(B)(vi).

6.      I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports made to me by agents of the FBI and other federal, state and local law enforcement agencies.

7.      I submit this affidavit for the limited purpose of establishing probable cause to believe SKERRITT has committed the above offense.  Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation. I have set forth only the facts that I believe are needed to establish the requisite probable cause.

## THE INVESTIGATION

### I.     BACKGROUND

8.      The Federal Bureau of Investigation ("FBI") and the Boston Police Department ("BPD") are investigating SKERRITT, who I believe is an associate of the Morse Street gang in

Boston. Under the FBI's direction, an FBI cooperating witness ("CW-1")[1] made a controlled purchase of over forty grams of fentanyl on February 1, 2023.

## II.      CONTROLLED PURCHASE FROM SKERRITT ON FEBRUARY 1, 2023

9.      On February 1, 2023, CW-1 communicated with SKERRITT, who CW-1 knows by his nickname, "BLACK," through a series of phone calls and text messages, during which SKERRITT agreed to sell 5 "fingers," meaning 50 grams of fentanyl, for $1,500 to CW-1.  During these initial communications, they agreed to meet at TARGET LOCATION – 1.[2]  Shortly thereafter, SKERRITT instructed CW-1 to meet at a different location in Boston, approximately 0.1 miles away from TARGET LOCATION – 1.

10.      Following the series of communications between SKERRITT and CW-1, law enforcement officers searched CW-1 and his/her vehicle for contraband and money with negative results.  Law enforcement officers provided CW-1 with $1,500 of official agency funds ("OAF") to complete the drug purchase and an audio/video recording device and a transmitter, which recorded the controlled purchase.  Law enforcement officers then instructed CW-1 to meet with SKERRITT and make the drug purchase, and subsequently surveilled CW-1 to the pre-arranged meeting location in the vicinity of TARGET LOCATION – 1 in Boston, MA.

---

[1]  CW-1 has a criminal history that includes prior arrests for assault and battery with a dangerous weapon, breaking and entering, and distribution of Class A. On previous occasions, CW-1 has accurately identified, and corroborated events and individuals involved in active criminal investigations, including drug and firearm investigations.  CW-1's information has led to previous search warrants, arrests, convictions, and seizures related to drugs and firearms. At the direction of law enforcement, the CW-1 has conducted controlled purchases of evidence in conjunction with criminal investigations.  CW-1's cooperation is financially motivated and CW-1 is being paid for his/her services and information provided.  Based on the corroboration, including recordings, I believe that CW-1's information is reliable.

[2] I am aware that TARGET LOCATION – 1 is SKERRITT's mother's residential address in Boston, MA. I am not including that specific address for the purpose of this affidavit in support of a criminal complaint.

11.     While law enforcement officers surveilled CW-1 to the pre-arranged meeting location, additional law enforcement officers were conducting surveillance at the TARGET LOCATION – 1 in Boston, MA and observed SKERRITT, who was wearing a face covering, arrive at the TARGET LOCATION – 1 in a gray Nissan Altima, with California registration 9BZH119 (the "gray Nissan Altima").   Investigators, including myself, are familiar with SKERRITT'S appearance based on surveillance during the investigation, his RMV photo, and prior interactions with involved officers from BPD.  SKERRITT used a key to unlock the door and enter that residence.  A few minutes later, SKERRITT exited the residence and drove the gray Nissan Altima directly to the pre-arranged meeting location in the vicinity of TARGET LOCATION – 1 in Boston, MA, where he met with CW-1.

12.     Agents, while monitoring the controlled purchase via physical surveillance and the transmitter, observed the following: SKERRITT entered the front passenger seat of CW-1's vehicle and engaged in a brief conversation with CW-1, during which SKERRITT and CW-1 conducted an exchange. After the exchange, SKERRITT walked directly from CW-1's vehicle back to the gray Nissan Altima and left the area.  CW-1 then also left the area.

13.     After CW-1 left the vicinity of TARGET LOCATION – 1, law enforcement officers surveilled CW-1 to a predetermined location and retrieved from CW-1 the recorder and transmitter and a clear bag containing a white powdery substance.  Law enforcement officers then searched CW-1 and his/her vehicle again, with negative results.  During the debriefing, CW-1 told agents that CW-1 met with SKERRITT where he/she purchased the suspected narcotics in exchange for the OAF.

14.     The clear bag contained approximately 55.0 grams of a white powdery substance that field-tested positive for the presumptive presence of fentanyl. Based on my training and

experience, as well as that of other agents familiar with this investigation, the white powdery

substance appeared to be fentanyl. Additionally, I believe this based on various factors, including

the information learned during the course of this investigation and the packaging, size, shape &

color of the substance.

### CONCLUSION

15.    Based on the foregoing, there is probable cause to believe that on February 1, 2023,

in Boston, in the District of Massachusetts, SKERRITT did knowingly and intentionally possess

with intent to distribute, and distribute, over 40 grams of fentanyl, in violation of Title 21, United

States Code, Sections 841(a)(1) and (b)(1)(B)(vi).


I declare the foregoing is true and correct.

_____
Jason Taylor
SPECIAL AGENT, FBI


The affiant appeared before me on this date, by telephonic conference or other reliable electronic means, pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Subscribed and sworn to on
this  3  day of February, 2023.

_____
HONORABLE JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

